UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

KEVIN FORDE,

        Petitioner,

v.                                        Civil No. 4:14cv143
                                          Criminal No. 4:11cr89
UNITED STATES OF AMERICA,

        Respondent.

OPINION and ORDER

This matter is before the Court on Kevin Forde's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner's § 2255 Motion and associated memorandum advance five claims, all alleging ineffective assistance of counsel. After reviewing the written record, the Court finds that an evidentiary hearing is unnecessary because the Court's rulings do not turn on credibility determinations, and the record conclusively demonstrates that Petitioner is not entitled to any relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's § 2255 motion is **DENIED**.

I. FACTUAL AND PROCEDURAL HISTORY

On August 15, 2012, Petitioner and six co-conspirators were charged with various federal criminal offenses in a second superseding indictment arising from a large drug trafficking

conspiracy.[1]   ECF No. 716.   Petitioner pled not guilty to the criminal charges and proceeded to a joint jury trial with co-defendant Alano Blanco.   At trial, the evidence revealed Petitioner's long-term involvement in drug trafficking, and on November 7, 2012, the jury returned a verdict finding Petitioner guilty of three of the four charged offenses, including a drug trafficking conspiracy in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).[2]   ECF No. 931.   On March 21, 2013, Petitioner was sentenced by this Court to 300 months imprisonment.

Subsequently, Petitioner's counsel filed a Notice of Appeal to the Fourth Circuit.   ECF No. 1083.   On appeal, defense counsel argued that this Court erred by denying a previously filed motion to sever Petitioner's case from his co-defendants' cases.   On March 10, 2014, the Fourth Circuit issued an unpublished opinion affirming the judgment of this Court and denying Petitioner's motion to file a pro se supplemental brief in support of his appeal.   ECF No. 1148.

Petitioner thereafter timely filed the instant § 2255 motion, affidavit, and memorandum in support, advancing five claims, the first four challenging trial counsel's performance

---

[1] In total, thirty-three individuals were charged in this case, with many pleading guilty long before the second superseding indictment was issued.

[2] While a conviction pursuant to 21 U.S.C. § 841(b)(1)(A) typically includes a mandatory minimum punishment of ten (10) years imprisonment, Petitioner's mandatory minimum on Count One was twenty (20) years imprisonment as a result of the Government certifying Petitioner's prior drug conviction through the filing of an "Information" pursuant to 21 U.S.C. § 851.

and the fifth challenging appellate counsel's performance. ECF Nos. 1170, 1211. The Government filed a brief in opposition to Petitioner's § 2255 motion, ECF No. 1215, and Petitioner filed a reply brief. ECF No. 1276. This matter is therefore ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id.; see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new

proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion, see United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to

4

have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005); see United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quotation marks and citation omitted).

Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare

situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. A petitioner's showing of deficient performance must therefore go beyond establishing that counsel's performance was below average, because "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As recently reiterated by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either of the two prongs of the Strickland test, the court need not evaluate the other prong. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

## III. DISCUSSION

### A. Ground One

Petitioner's first claim alleges that both his trial counsel (Mr. Lewis) and his previously appointed trial counsel (Mr. Jones) were ineffective for failing to challenge "the government's non-compliance with . . . the Speedy Trial Act." ECF No. 1170, at 10. Contrary to Petitioner's assertions in his reply brief, an evidentiary hearing is not necessary on such issue, nor does the Court need to expand the record through the consideration of affidavits from defense counsel, as the record conclusively demonstrates that Petitioner's claim fails to satisfy either prong of the Strickland test.

First, it should be noted that Petitioner's speedy-trial concerns have been well-litigated in this case, and were addressed both through written briefing and through arguments heard in open court prior to Petitioner's trial. To the extent Petitioner's § 2255 motion and reply brief argue that his

original counsel was deficient for allowing Petitioner's trial to be set outside of the 70-day speedy trial period, such argument fails both prongs of Strickland as this case was properly deemed "complex" from the outset, with all parties needing additional time to prepare, as evidenced, in part, by the fact that the original indictment charged more than fifteen defendants with multiple federal crimes associated with a drug trafficking conspiracy spanning more than a decade. ECF No. 2; see 18 U.S.C. § 3161 (h)(7); see also ECF No. 1121, at 14-16 (discussing the complexity of the case, including the 90 days of Government wiretaps, the financial investigation, phone records, and the number of individuals that provided information to the Government about Petitioner). Accordingly, Petitioner's original counsel was not constitutionally deficient for failing to object to the Court's original decision to set the case outside of the speedy trial deadline, and no prejudice resulted from defense counsel's handling of such matter.

The Court reaches the same conclusion regarding allegations of ineffective assistance with respect to a subsequent continuance of the trial date, which moved Petitioner's trial from April of 2012 until September of 2012. Notably, such continuance was requested by counsel for a co-defendant, not the Government, and counsel for Mr. Forde agreed to such continuance, ECF No. 521, later explaining in open Court that he

had agreed to it after considering that "there might be some strategic delay in looking for witnesses for a potential alibi in a continuance, so there was no objection from defense counsel at that time." ECF No. 1121, at 10; see United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2014) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys."); cf. 18 U.S.C. § 3161 (h)(6) (indicating that the speedy trial calculation does not include a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). Moreover, at the urging of Petitioner, on May 22, 2012, Mr. Jones moved to dismiss the indictment on behalf of Mr. Forde, alleging a speedy trial violation, even though counsel appeared to believe that such motion was unlikely to succeed. ECF No. 587. At a joint hearing addressing such motion and two other motions, including a pro se filing submitted by Mr. Forde that was construed as a motion seeking to replace Mr. Jones as appointed counsel, Mr. Forde provided the following sworn explanation:

> THE DEFENDANT: Okay, Your Honor. I have spoken with Mr. Jones about this process beforehand. Me getting the state habeas paperwork was because of me trying to shed light on the situation feeling that I had [to] take things into my own hand because me and Mr. Jones was clashing on whether I could file for dismissal, or

back to my second bond hearing, I wanted to file for a
second bond hearing which he didn't feel like we should
do or we could do or we wouldn't get.  And through that
process I felt like, well, I got to do something, so I
asked the jail to give me some type of paperwork so I
could speak to the court for myself. . . .

So on the dismissal it was just to shed light on the
motion that I felt like my speedy trial right
violations -- rights was violated, me being in jail
over seven, eight months now and not getting my trial.
Mr. Jones let the government have a continuance, he
didn't object to the continuance when it was brought to
his attention that they wanted one.

THE COURT: Now that was, that was the motion filed by
the two other defendants; in other words, two of your
co-defendants.  First, the trial was set April 30th
after it was declared to be complex –

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- a complex case. And you didn't object to
the trial being set on April 30th, the first trial
date; is that right?

THE DEFENDANT: No, I didn't object the first time.

THE COURT: Okay.  And then when two of the co-
defendants in the case wanted to continue the case
again, and it was continued from April to September,
and your counsel indicated no objection.  That is what
you object to; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

THE DEFENDANT: But I didn't, at the time, have the
understanding that two co-defendants from my case had
objected. I hadn't talked to Mr. Jones until after
April 30th through that whole month.

THE COURT: So you thought it was the government that
had requested it for their purpose?

THE DEFENDANT: Yes. I was under the impression that the
government just wanted a continuance and I was saying

we can go to trial with what we have as far as on April 30th, or I wanted the government to have to come and tell you why they wanted a continuance instead of just getting one because my lawyer didn't object.

THE COURT: Okay. So now -- so after you filed these, this document, this habeas corpus, state habeas corpus-type motion which I have construed as motion for new counsel, you then talked to your attorney and understood that it was actually your co-defendants that had sought the additional continuance; is that right?

THE DEFENDANT: Yes, Your Honor. He then explained it to me. And then at that point he told me that he would file for dismissal on my behalf. But the things that he seen inside the dismissal that he thought didn't give us a strong way of fighting for the dismissal, but he told me that he would do it. Before that he told me he wouldn't do it unless I showed him where we were prejudiced at inside of the dismissal. I gave him what I could from me not being a lawyer, but I gave him what I could as far as I felt sitting in jail so long and not having this trial. And, but he said he would and he did. And after that I came to the conclusion that this paperwork was looked at in the wrong way. I didn't want to have him relieved as my lawyer, he's a great lawyer and he's been doing everything in his power to help me in the case in the situation that it is, that I'm in jail and not able to help him being on the street to contact who I need to contact to help my case. I'm in jail. So he's been doing what he possibly can. I did not never wanted to get him off the case, I just wanted to shed light on the case and what the situation was. But as we stand here today, I do not want to have Mr. Jones removed from the case. For me to get a new lawyer and be ready within two months in September would be, it would be impossible.

THE COURT: Okay. So you've talked with Mr. Jones since you filed this motion. Have those conversations been helpful to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you feel like he's listening to what you have to say?

THE DEFENDANT: Yes, Your Honor.

> **THE COURT:** All right. Mr. Jones, do you want to say anything in response to that? I'm not sure that you really need to, but...
>
> **MR. JONES:** Your Honor, I have nothing to add unless there are specific questions that the court has for me.
>
> **THE COURT:** I don't think so.  I think that this in essence is a -- I consider that to be a withdrawal of the motion for new counsel that Mr. Forde had originally filed.  And so I will deem that motion to be withdrawn.
>
> That having been done, Mr. Forde, you can have a seat back at counsel table.
>
> **THE DEFENDANT:** Thank you, Your Honor.

ECF No. 1121, at 4-8 (emphasis added).  At the conclusion of the hearing, the Court denied the motion to dismiss on speedy trial grounds, again noting the complexity of the case, the number of co-defendants remaining at that time (fourteen) and the fact that the interests of justice, to include Mr. Forde's interest in having time to review additional discovery and prepare an adequate defense, weighed in favor of the previously ordered continuance.  Subsequently, in August of 2012, Mr. Jones submitted a written motion on Petitioner's behalf seeking to sever Petitioner's case from his co-defendants, again advancing speedy trial challenges.  ECF No. 744.  Such motion was denied on all grounds by the Court through a written Order issued on September 7, 2012.  ECF No. 777.

In light of the above, Petitioner has plainly failed to demonstrate constitutionally deficient performance or resulting

prejudice stemming from his lawyer's strategic decision not to object to the timing of the scheduled trial, up until the point when counsel did object on multiple occasions at Petitioner's urging. The Court notes, for completeness, that Petitioner's trial did not occur on September 11, 2012, but instead began on October 30, 2012. The trial was rescheduled at the September 7, 2012 arraignment of Petitioner and co-defendant Alano Blanco following the return of the second superseding indictment. Notably, at such hearing, the Court addressed the fact that Petitioner's counsel, Mr. Jones, would be moving to withdraw from the case because his license to practice law was being temporarily suspended. As represented to the Court, replacement counsel, Mr. Lewis, was: (1) already on this Court's approved list of court-appointed lawyers; (2) was available to take the case; and (3) shared office space with Mr. Jones, and had already spoken with Mr. Jones about the case on several occasions, all of which would help make the transition to Mr. Lewis "seamless." The defense was then afforded over seven weeks for such intra-office "seamless" transition to occur. ECF No. 895. Obviously, Mr. Jones and/or Mr. Lewis was not constitutionally deficient, nor did resulting prejudice occur, based on his failure to advance a "speedy trial" challenge to the final extension of the trial date because such extension was necessary to allow Mr. Jones to transfer (to Mr. Lewis) all of

the institutional knowledge/preparation/plan that was already in place as of September 2012. Accordingly, Petitioner's § 2255 motion fails to demonstrate ineffective assistance based on Mr. Jones and/or Mr. Lewis' performance associated with scheduling Petitioner's jury trial.

### B. Ground Two

On October 17, 2012, Mr. Lewis filed a motion seeking another continuance of Petitioner's trial date based on concerns regarding whether Mr. Lewis had adequate time to prepare for the October 30, 2012, trial date. ECF No. 864. On October 18, 2012, less than twenty-four hours after such motion was filed, the Court issued a written order denying the motion. ECF No. 865. The Court's order noted, among other things, that Mr. Jones had been fully prepared to go to trial the previous month (meaning that a defense plan was already in place), that the case was transferred to Mr. Lewis, rather than another attorney, at the request of the defense in order to allow the "seamless" transition of the case, and that Mr. Lewis still had more than ten days, including two intervening weekends, to prepare for trial.[3] Id. Petitioner's second § 2255 claim alleges that Mr. Lewis was ineffective for failing to file a second motion to continue the October 30, 2012, trial date after this Court

---

[3] As noted in the Court's denial, Mr. Lewis' arguments in support of the requested continuance appeared to be grounded primarily on assertions that he had a busy schedule, which is not atypical for any trial lawyer. ECF No. 865.

denied Mr. Lewis' October 17, 2012, motion.  Petitioner contends that this case had such a high degree of complexity that Mr. Lewis had insufficient time to prepare, appearing to further argue that Mr. Lewis did not act diligently in his trial preparations.

Petitioner's allegation that Mr. Lewis was constitutionally deficient for failing to file a second motion to continue fails to satisfy either prong of Strickland.  First, Petitioner fails to demonstrate constitutionally deficient performance in light of the fact that: (1) Mr. Lewis did file a timely motion seeking to continue the trial date to allow for additional time for preparations; and (2) this Court quickly denied such motion in light of the fact that Mr. Jones had already prepared the entire case for trial, needed only to "transition" such case to his office-mate, Mr. Lewis, and that as of the date of the Court's denial, there were still more than ten days to allow Mr. Lewis to prepare for trial.  As Petitioner does not now advance sufficient facts evidencing a valid basis for filing a second motion to continue during the final days leading up to trial, he fails to demonstrate that his counsel performed at a constitutionally deficient level.

Second, as to prejudice, even assuming that defense counsel should have filed such second motion, Petitioner fails to demonstrate resulting prejudice.  Specifically, Petitioner's

§ 2255 filings fail to demonstrate a reasonable probability that the Court would have granted a second motion if filed by Mr. Lewis. Importantly, Mr. Jones had previously indicated that he was ready for trial, and he informed the Court when he was forced to withdraw that he had spent more than 100 hours preparing Petitioner's case and that he would transition such knowledge to his office-mate Mr. Lewis. As recognized by the Court in October of 2012, ECF No. 865, Mr. Jones was precluded from representing his clients around the time of the transition, and thus, the Court's view was that there was ample time to transition the case to Mr. Lewis. Moreover, nothing that occurred during trial, nor anything in Petitioner's § 2255 motion, demonstrate that: (1) Mr. Lewis had a reasonable probability to secure a continuance had he filed a second motion seeking to delay the trial; or (2) Mr. Lewis was not fully prepared to provide a constitutionally adequate defense of the case on October 30, 2012.[4] Thus, Petitioner fails to demonstrate resulting prejudice.[5]

---

[4] Other than vague references to Mr. Lewis' decision not to subpoena witnesses that Mr. Jones had purportedly subpoenaed, as well as a reference to Mr. Lewis' failure to present a "Music Hard Drive" to the jury to prove that Petitioner was an entertainer, Petitioner's § 2255 memorandum, advanced years after trial, fails to articulate on what basis a more robust defense could have secured a different outcome at trial. The decisions of which witnesses to call, and trial counsel's decision to focus on seeking to discredit Government witnesses rather than pursue a theory that Petitioner could not have sold drugs because he was also an "entertainer," are strategic decisions to be made by counsel. United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010); cf. ECF No. 1122, at 97-98 (transcript documenting the comments by the Court at Petitioner's

## C. Ground Three

Petitioner's third claim alleges that Mr. Lewis was constitutionally deficient based on his failure to renew his Rule 29 motion seeking judgment of acquittal. Petitioner asserts that such a motion should have been advanced, even after the jury's return of its verdict, because the trial evidence was insufficient to sustain a conviction. A review of the trial record indicates: (1) that Mr. Lewis made a Rule 29 motion at

---

sentencing hearing, noting that additional evidence regarding Petitioner's participation in the music industry was unlikely to have had any impact on the outcome of the trial). Similarly, Petitioner's assertions in his reply brief that, with more time, Mr. Lewis would have moved to "suppress" the testimony of Government witness Randy Brown, based on the fact that Mr. Brown was not a member of the charged conspiracy, fails to demonstrate that a different defense plan would have had a reasonable probability of success. The jury was instructed on the possible existence of "multiple conspiracies" and it was for the jury to decide, after hearing the testimony of Mr. Brown and the other alleged co-conspirators, whether Mr. Brown (and ultimately whether Petitioner) was a member of the conspiracy charged in this case. Finally, Petitioner's reply brief contention that defense counsel should have pursued a "buyer-seller" jury instruction also fails to demonstrate constitutionally deficient performance or resulting prejudice because "the facts showed that the relationship [between Petitioner and Mr. Brown, and others] went beyond that of a mere buy-sell transaction." United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993); see United States v. Arey, No. 5:05cr29-2, 2009 WL 2596611, at *5 (W.D. Va. Aug. 21, 2009). Moreover, even if counsel's conduct was deficient, in light of the multiple accurate statements of the law within the jury instructions outlining the proof necessary to establish a conspiracy, and in light of the trial testimony presented through Mr. Brown, Ms. Tammy Carter, and others (as well as Fourth Circuit law indicating that repeated drug transactions involving large quantities of drugs may themselves be viewed as evidence that a conspiracy existed), Petitioner fails to demonstrate a reasonable probability that a buyer-seller instruction would have changed the outcome at trial. See Mims v. United States, No. CR 1:08-729, 2015 WL 261767, at *5 (D.S.C. Jan. 21, 2015). In sum, Petitioner's various challenges to counsel's performance that he asserts were evidence of inadequate preparation, many of which are not fleshed out until Petitioner's reply brief, fall short of the showing necessary to succeed on collateral review and/or to warrant an evidentiary hearing.

[5] The defense presented at trial by Mr. Lewis secured an acquittal on one of the four criminal counts then-pending against Petitioner.

the close of the Government's case; (2) that the Court took such motion under advisement; (3) that Mr. Forde did not put on a defense at trial; (4) at least based on the portions of the trial that were transcribed, it appears that the Court never ruled on the reserved motion; and (5) based on the transcript, it further appears that Mr. Lewis did not renew his Rule 29 motion, either before, or after, the case was submitted to the jury.

First, to the extent Petitioner challenges his counsel's failure to "renew" his motion at the close of all evidence, Petitioner fails to demonstrate constitutionally deficient performance because Petitioner did not present any evidence after the Government rested, and thus, there is no legal requirement that the motion be "renewed" in order to preserve the issue for appeal. United States v. Daniels, 723 F.3d 562, 569 (5th Cir. 2013); see 9B Fed. Proc., L. Ed. § 22:2179 ("A defendant who moves for a judgment of acquittal under Fed. R. Crim. P. 29 at the close of the government's case must move again for judgment of acquittal at the close of the entire case if the defendant thereafter introduces evidence in his or her defense, since by presenting such evidence the defendant is deemed to have withdrawn the motion and thereby to have waived any objection to its denial.") (emphasis added). The fact that Petitioner's co-defendant decided to present evidence and

testify does not alter the calculus.   United States v. Arias-Diaz, 497 F.2d 165, 168-69 (5th Cir. 1974).

Second, even assuming that Petitioner's counsel was deficient for failing to "renew" the Rule 29 motion, or for failing to otherwise act to ensure that this Court issued a formal ruling on such motion, Petitioner fails to demonstrate resulting prejudice.  The jury's verdict of guilt as to Counts One, Two and Five was supported by ample evidence, and in the Court's view, was unquestionably reasonable.   The Court makes such finding after having presided over this trial for over a week.[6]  Moreover, the Court's viewpoint as to the sufficiency of the evidence is not newly formulated on collateral review, but was stated by the Court, on the record, in the immediate aftermath of trial.  Specifically, at Petitioner's sentencing, the Court made the following statement:

> Mr. Forde has made much today of the fact that he was not part of a larger conspiracy, he didn't know Robert Sargent, that he was not an integral part of that part of the conspiracy.  That does not in any way in my mind mean -- I don't question that you were part of the conspiracy to distribute drugs.  You were involved with all these people that we did hear from.  And maybe you didn't make tons of money, maybe you didn't enjoy any of the glamor that other people may have, but you participated, for many, many years, as an adult in putting this poison out into the community.

---

[6] Petitioner's trial counsel moved for acquittal as to Counts One, Five and Thirteen.  The Court presumes that Counsel did not make such motion as to Count Two based on the absence of a good faith basis to advance a challenge to Count Two, which charged a specific cocaine transaction, on a specific day.  As to Count Thirteen, the jury's acquittal mooted any alleged error associated with such count.

And that was a decision you made as a mature adult that you were going to do that. <u>And that you were going to do it for a long time.  And you repeatedly did it</u>.  That tells me an awful lot about you.

. . .

And so when you come in here and try to tell me that you, you know, Judge, they have just totally mischaracterized everything that I've done -- <u>I don't discount the fact, Mr. Forde, that you were a song writer</u> or that you had these contracts or that you were doing these other things, and it could have been, <u>somebody could have sat on this witness stand and told me and the jury the same thing, and I'm convinced you would have been convicted one way or the other</u> because of the testimony you heard[,] you were doing this, and your protestations notwithstanding, <u>you were guilty of it, and you were guilty of doing this over a long period of time</u>.  And it's very serious. . . .

I think I understand exactly what you're saying about your role vis-a-vis other persons in this large group of people.  But that doesn't minimize in my eyes all the things that we have here and the jury's conviction of you for what they have heard.

ECF No. 1122, at 97-98; <u>cf.</u> <u>United States v. Sykes</u>, No. 05-CR-6057, 2015 WL 2451745, at *1 (W.D.N.Y. May 21, 2015) (addressing a prisoner's "Rule 36" challenge to the district court's alleged failure to rule on a post-verdict motion for judgment of acquittal, calling such argument "moot" for several reasons, including the fact that "the Court's statement at sentencing [regarding the clear proof of guilt] implicitly indicated that [the defendant's] arguments concerning the sufficiency of the evidence lacked merit").  Accordingly, Petitioner fails to satisfy either the deficient performance prong or the resulting prejudice prong of <u>Strickland</u>, with the latter failure best

demonstrated by the fact that this Court unquestionably would have denied any Rule 29 motion that was renewed by defense counsel.[7]

### D. Ground Four

Petitioner's fourth claim alleges that Mr. Lewis was ineffective for failing to investigate the findings in the PSR and contest the drug weights and other matters resulting in Guideline enhancements at sentencing. Such claim is rejected, with Petitioner's sentencing transcript revealing on its face that counsel performed effectively. Additionally, Petitioner fails to demonstrate resulting prejudice on this claim.

At Petitioner's sentencing, Mr. Lewis raised the following issues: "the firearm enhancement objection, the drug weight calculation objection, the leadership role objection, the maintenance of a drug premises objection, and then additional fact objections that do not impact the calculation of guideline range." ECF No. 1122, at 5. Not only were such objections raised and argued, but Mr. Lewis was successful on the leadership objection, the drug premises objection, and in part,

---

[7] Petitioner's § 2255 contention that there was insufficient evidence to demonstrate that he entered into a drug trafficking conspiracy, as contrasted with having a mere "buyer-seller" relationship with certain individuals, overlooks the trial evidence regarding Petitioner's joint agreement with Ms. Carter to distribute drugs, as well as the evidence regarding Petitioner's ongoing relationship with Mr. Brown and other suppliers and/or buyers whereby drug debts were forgiven and/or drugs were "fronted."

on the drug weight objection.[8]  Such success resulted in reducing
Petitioner's Guideline "offense level" <u>by 7 levels</u>, reducing his
Guideline range from "life" to 262—327 months.  Successfully
securing such a large offense level reduction at sentencing
occurs infrequently in this Court, and Mr. Lewis' representation
was unquestionably constitutionally sufficient.[9]  Petitioner's
contention that Mr. Lewis performed at a level so deficient that
he was not acting as the "counsel" guaranteed by the
Constitution is therefore flatly rejected by the Court.

---

[8] Petitioner was sentenced in 2013 prior to enactment of Guideline
Amendment 782, which decreased the base offense level calculation
applicable in drug trafficking cases by two levels.  Accordingly, while
Petitioner may be eligible for a sentence reduction based on retroactive
Amendment 782, he fails to demonstrate that his counsel performed
deficiently, or that any sentencing error occurred, at the time of
sentencing under the <u>then-applicable</u> drug trafficking Guidelines (a review
of the docket does not reveal any pending motions pursuant to 18 U.S.C.
§ 3582(c) seeking a sentence reduction based on Amendment 782).

[9] It appears that Petitioner's reference in his § 2255 to defense
counsel's failure to challenge "the summarization of all the facts of the
case" is intended to assert that counsel should have challenged the fact
that the drug weights in the PSR are estimated totals.  To the extent such
argument is advanced, it fails, because well-established case law permits
the approximation of drug weights at sentencing.  <u>See</u> <u>United States v.</u>
<u>Uwaeme</u>, 975 F.2d 1016, 1019 (4th Cir. 1992) ("Neither the Guidelines nor
the courts have required precise calculations of drug quantity.  When no
drugs are seized or the amount seized does not reflect the scale of the
offense, the district court may 'approximate' the quantity to be used for
sentencing."); U.S.S.G. § 2D1.1 App. n.5 (indicating that the Court "<u>shall</u>
approximate" the drug quantity if there is no drug seizure) (emphasis
added); <u>United States v. Hickman</u>, 626 F.3d 756, 769 (4th Cir. 2010)
("[W]here courts have evidence of a number of transactions, they have been
permitted to multiply that number by an average weight-per-transaction to
reach an estimate . . . though the circuit courts have urged district
courts to make conservative approximations.") (internal quotation marks
and citations omitted).  Moreover, counsel did <u>successfully</u> challenge the
accuracy of the drug weight calculation in the PSR resulting in a
reduction to Petitioner's Guideline "Offense Level."  Petitioner's
"summarization" claim thus fails to demonstrate constitutionally deficient
performance, or resulting prejudice, based on the applicable law and the
facts of this case.

Alternatively, even if Mr. Lewis had performed deficiently at sentencing, Petitioner fails to demonstrate resulting prejudice. Specifically, Petitioner fails to demonstrate that presenting additional evidence or argument regarding the drug weight calculation and/or firearm enhancement at sentencing had a reasonable probability of changing the outcome.

As to the drug weight issue, which is the primary focus of ground four in Petitioner's § 2255 motion, the Court rejects Petitioner's contention that he suffered prejudice as a result of counsel's failure to challenge the Court's reliance on testimony from an individual (Randy Brown) that Petitioner claims was "not a member" of the instant conspiracy. First, contrary to Petitioner's arguments, the fact that Mr. Brown, an unindicted co-conspirator, was charged and convicted in a separate federal prosecution does not establish that Mr. Brown did not participate in the conspiracy before the Court. See ECF No. 1086 (presentence investigation report attributing Petitioner with drug weights based on the trial testimony of an "unindicted co-conspirator," who was identified at sentencing as Randy Brown); ECF No. 716 (second superseding indictment charging a conspiracy between Petitioner, numerous expressly named co-defendants, and other unnamed persons, both "known and unknown"); see also United States v. Williams, 547 F. App'x 251, 258 n.18 (4th Cir. 2013) (indicating in a case where the

23

defendant was charged with conspiring with a named individual and "others both known and unknown" that "[t]he government may prove a conspiracy even if the defendant's co-conspirator remains unknown, so long as it presents evidence of an agreement between two or more persons"). Moreover, even if it is assumed that Petitioner could demonstrate that Mr. Brown was not a member of the specific conspiracy charged in the second superseding indictment, he fails to demonstrate that his drug purchases from Mr. Brown were not "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) based on such conduct constituting part of the "same course of conduct or common scheme or plan" as Petitioner's offenses of conviction.[10]   Finally, even assuming that Petitioner could mount a successful challenge to the entire 30 kilograms of cocaine attributed at sentencing based on the information in PSR ¶ 46 regarding Petitioner's purchases of cocaine from Mr. Brown, PSR ¶ 45 includes facts establishing that Petitioner distributed more than 30 kilograms of cocaine to other named individuals during the course of the charged conspiracy, but such drug weights were not attributed to

---

[10]   To the extent Petitioner's § 2255 sentencing argument can be construed as arguing that Petitioner was improperly sentenced based on "uncharged conduct," the law is well-established that a sentencing judge may rely on uncharged conduct in determining the applicable Guideline range at sentencing.  See United States v. Grubbs, 585 F.3d 793, 798-99 (4th Cir. 2009) (discussing the "clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence").

Petitioner at sentencing "to avoid the possibility of double counting."   ECF No. 1086 ¶ 45-46.   Stated differently, even if Petitioner's cocaine purchases from Mr. Brown were removed from the drug weight calculation, his cocaine sales would remain. For the above stated reasons,[11] Petitioner's contentions that he received ineffective assistance at sentencing are denied.

### E. Ground Five

Petitioner's fifth and final claim alleges that his appellate counsel (Mr. Lewis) was ineffective for failing to appeal: (1) "the denial of movant's motion for a continuance;" (2) "the district court's neglect to reconsider movant's Rule 29 motion"; and (3) "counsel's failure to challenge the validity of movant's simple possession conviction under § 851(b)-(c)."   ECF No. 1170, at 20.   First, Petitioner fails to demonstrate deficient performance on appeal because he fails to establish that any of the "ignored issues are clearly stronger than those presented."   Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (quotation marks and citation omitted); see Smith v. Murray, 477 U.S. 527, 536 (1986) (indicating that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of

---

[11] Petitioner's challenge to defense counsel's handling of the firearm enhancement contends that the Government's evidence should have been challenged as it was presented by witnesses who were not members of the instant conspiracy.   Such claim fails for the same reasons as Petitioner's drug-weight claim.

incompetence, is the hallmark of effective appellate advocacy") (internal quotation marks and citation omitted). Even in hindsight, Petitioner fails to demonstrate that a challenge to this Court's denial of a pre-trial continuance had any reasonable chance of success on appeal, particularly in light of: (1) defense counsel's apparent preparedness and effective performance at trial, as evidenced by the trial transcript; and (2) Petitioner's failure to effectively articulate an alternative defense strategy with a reasonable chance of success that could have been pursued if Mr. Lewis had additional time to prepare.

Petitioner likewise fails to demonstrate that appellate counsel should have pursued a challenge to this Court's failure to issue an express ruling on the Rule 29 motion. A review of case law suggests that it is highly likely that the Fourth Circuit would have considered this Court's entry of judgment an "implicit denial" of the Rule 29 motion, even in the absence of this Court's statements at sentencing regarding the sufficiency of the evidence. United States v. Freeman, 763 F.3d 322, 346 n.10 (3d Cir. 2014); see United States v. Dubrule, 822 F.3d 866, 884 (6th Cir. 2016) (noting in a case involving the district court's failure to rule on a motion for a new trial that "those of our sister circuits to have commented on this issue appear to agree that entry of final judgment constitutes an implicit

denial of pending motions," and citing case law in support from the Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh Circuits); United States v. Mota, 598 F.2d 995, 998 (5th Cir. 1979) (indicating that "the court never ruled on the motion [for an acquittal], thereby denying it") (emphasis added). Moreover, even if it is assumed that defense counsel could have succeeded in obtaining a remand to this Court for entry of a formal order on Petitioner's Rule 29 motion, there was no doubt whatsoever at the time of Petitioner's appeal that the outcome on remand would not have been favorable to Petitioner in light of this Court's clear statements regarding the sufficiency of the evidence at sentencing. Accordingly, defense counsel had no valid basis to pursue such a fruitless course on appeal.

To the extent Petitioner's § 2255 motion contends that counsel should have raised a sufficiency of the evidence claim on appeal (as contrasted with a challenge to this Court's failure to rule on such claim during, or immediately after, trial), Petitioner fails to demonstrate a valid basis for arguing on appeal that the evidence was insufficient to support the jury's verdict. Therefore, he fails to demonstrate that such a claim is "clearly stronger" than the claim presented.

As to Petitioner's arguments asserting that his prior conviction should have been challenged on appeal as insufficient to support the Government's § 851 information, Petitioner fails

to demonstrate that he has any valid basis for challenging his prior conviction, and thus, falls far short of demonstrating that counsel was constitutionally deficient for failing to raise this issue. A review of 21 U.S.C. §§ 841(b)(1)(A), 802(44), and 851 reveal no appealable issue based on the Government's reliance on Petitioner's previous <u>felony</u> conviction for cocaine possession, notwithstanding Petitioner's assertion that such crime was a conviction for "simple possession." Moreover, § 851(e) states that the validity of a prior conviction is not subject to challenge if it occurred more than five years prior to the filings of the § 851 information. Here, Petitioner's prior conviction occurred more than a decade before the § 851 information was filed.[12]

Second, Petitioner fails to satisfy <u>Strickland</u>'s prejudice prong as to any of the errors alleged in ground five because he fails to demonstrate a reasonable probability of a different outcome if such matters were raised on appeal. <u>Lawrence</u>, 517 F.3d at 709. For the same reasons discussed above, Petitioner's § 2255 motion and associated filings fail to demonstrate that any of such claims, if raised on appeal, would have had any

---

[12] The Court notes that while the § 851 enhancement played a role in determining the term of supervised release imposed at sentencing, it played no role in determining Petitioner's term of imprisonment, as even after defense counsel succeeded on three different challenges to the Guideline calculation, Petitioner's Guideline range (262 - 327 months) was well above the enhanced 240 month mandatory minimum, as was the ultimate sentence of 300 months.

reasonable chance of success.  Specifically: (1) Mr. Lewis was well-prepared for trial and the § 2255 filings do not present a compelling alternative defense that could have been mounted with additional preparation; (2) there was ample evidence of Petitioner's guilt presented at trial as to each of his three convictions; and (3) Petitioner fails to demonstrate that his prior state conviction was insufficient to support the Government's § 851 information.

For the above stated reasons, Petitioner's fifth ground for relief is denied.

## IV. CONCLUSION

For the reasons discussed above, each of Petitioner's ineffective assistance of counsel claims is **DENIED** on the merits.[13]  Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," as to any claim in his § 2255 motion, a certificate of appealability is **DENIED**.  See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that, because this Court has **DENIED** a certificate of appealability with respect to his § 2255 motion, he may seek a certificate from the United States Court of

---

[13] The Court notes that Petitioner's reply brief was filed by the Clerk "Subject to Defect" as it was not signed.  The Court's resolution of Petitioner's § 2255 motion is unchanged irrespective of whether the Court considers, or ignores, the arguments in the reply brief.

Appeals for the Fourth Circuit.   R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).   If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Opinion and Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____ /s/ 
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 16 , 2016